BEST FOODS DIVISION OF CORN PRODUCTS COMPANY

*vs.*

MALCOLM J. FORTIER

Kennebec.   Opinion, May 10, 1965.

*Albert L. Bernier,* for Plaintiff.

*Jerome G. Daviau,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, MARDEN, JJ. SIDDALL, J., sat at argument, but retired before opinion was adopted.

WILLIAMSON, C. J.   The defendant appeals from a jury verdict of $420.04 in his favor on a counterclaim for breach of a mutual distributing agreement covering the sale of plaintiff's products to the defendant for resale on the latter's routes in central Maine.

In the points of appeal the defendant urges error by the presiding justice in his instructions to the jury: first, in refusing to charge that damages should be measured by loss of net profits and without consideration of employment or nonemployment of the defendant in mitigation of damages; and second, in limiting damages for a 30-day period

in face of his contention that the contract was not legally terminated.

On the plaintiff's complaint the defendant admittedly owed for goods sold and delivered. A verdict for the plaintiff in the amount of $913.41 was directed without objection.

The jury could have found as follows:

In October 1957 the plaintiff seller and the defendant distributor agreed in writing as follows:

> "In Consideration of the various benefits accruing to us (me) because of our mutual distributing agreement, and in lieu of any other written contract for such distributing agreement, we (I) agree to the cancellation of such agreement at any time at the sole option of yourselves or ourselves (myself) by giving notice in writing to the other at least thirty days prior to the date specified in such ontice (sic) as the effective date for such cancellation of the said mutual distributing agreement. All obligations and liabilities, of both parties hereto, created or incurred in connection therewith, shall cease as of, and none shall survive, the ffective (sic) date of any such termination or cancellation of the said mutual distributing arrangement except the obligation and liability of (ourselves) (myself) for payment of the price for goods delivered to us (me) pursuant to the mutual distributing arrangement, and to return to (you) (seller) all other property which you may have furnished free of charge to us (me) for use in connection with the said mutual distributing arrangement.
>
> Yours very truly,

Accepted:                    s/ Malcolm J. Fortier

THE BEST FOODS, INC.  By      Owner
By   s/   E. P. Kenny              (Title)
          (Title)

Date    October 17, 1957"

The entire contract between the parties consisted of the "mutual distributing agreement," which was not in writing, and the written termination agreement. The terms of the "arrangement" thus must be found in the evidence. There was no writing to which the parties or the court may turn.

At the outset the defendant acquired a truck and other equipment from a distributor who had sold plaintiff's products in the same area and apparently under a like arrangement. Until 1961 the parties carried out the agreement to their mutual satisfaction.

In June 1961 the defendant sought to sell his business and so informed the plaintiff. Objections were made by the plaintiff to a substantial increase in the unpaid balance on defendant's account. On August 2 the plaintiff's New England district manager, who died before the trial, orally gave notice of the intention of the plaintiff to end the contract without, however, mentioning the precise termination date.

Under date of August 7 the plaintiff gave written notice by mail to the defendant as follows:

> "Dear Mr. Fortier:
>
> We refer to our Mutual Distributing Agreement with you, and in accordance with the terms thereof, and also confirming the advice of our Mr. F. A. Dole when he contacted you on Wednesday, August 2nd, 1961, we hereby exercise our option to cancel our Mutual Distributing arrangement.
> "The effective date for such cancellation shall be September 1st, 1961."

Mr. Kenny, who signed both the written agreement and the notice, was the eastern regional vice president of the plaintiff in New York City. The local representative had no authority to make or alter contracts such as that existing with the defendant.

During August there was a substantial reduction over past periods in the amount of goods supplied by the plaintiff. The evidence did not disclose the orders for goods placed by the defendant with the plaintiff in detail. Further, from June 1961 there was a reduction in substantial amount on the defendant's outstanding account with the plaintiff.

The defendant contended that through inability to obtain goods from the plaintiff, the plaintiff breached the agreement and effectively destroyed his ability to maintain his route. He denied that the failure to obtain goods was reasonably caused by the precariousness of his credit.

In late August the defendant and the plaintiff's representative agreed that an inventory should be taken in September. This was done and approved by the parties on September first.

The written notice in its terms was given less than thirty days prior to the stated effective date of September 1, 1961. No objection, except as noted above, was made by the defendant to the termination of the contract by the plaintiff on September 1, or at any time until the filing of the counterclaim in October 1962.

The jury was instructed in substance that the contract was terminated by the written notice either on September 1 through waiver of the insufficiency in the notice, or thirty days from the receipt of the notice by the defendant, that is, about September 7. On either alternative, damages were limited by the instructions to the 30-day period prior to an effective termination of the contract under the written notice.

The defendant contends that thereby he was erroneously deprived of damages covering a longer period. He also asserts error in the method of computing damages.

The difficulty in reaching the issues presented by the defendant is that the *terms of the oral agreement* cannot be

satisfactorily established from the evidence. Why the parties should have so loosely created a "mutual distributing agreement" and so carefully provided in writing for its termination, we do not know; but such is the case.

From the evidence the jury knew no more than that the parties entered into an agreement with unknown terms under which they amicably carried on their business relationship for some years. We find no evidence of terms relating to stated or minimum purchases from the plaintiff, to the prices to be charged, or to the credit open to the defendant, all of vital consequence to the parties.

There is to be sure in the record evidence suggesting, but no more, a limit on the credit to be extended the defendant. The Assistant Credit Manager testified that a notation on the record of defendant's account reading "credit limit $2,000," was "stricken after the account was closed. The credit limit is for order passing purposes for anyone other than myself."

Such evidence discloses guides and directions within the operation of the plaintiff's business. It does not warrant a finding of the credit terms, if any, of the agreement.

The presiding justice instructed the jury that the plaintiff "would not be required under the agreement to extend credit beyond the amount agreed upon." He continued, "It will be for you to say what was that amount. If there was no amount specified, it would be for the Counter-Defendant [the plaintiff], Best Foods in this case, to extend such credit as it saw fit." Later he said, "Now, in this case it will be for you to say whether or not the Defendant [meaning the plaintiff], Best Foods, did breach the contract by its failure, first, to provide merchandise or products, or whatever the goods were, to the Plaintiff Fortier so that he might sell and distribute the same. And if you find that they breached the contract, that at the time the orders were placed his indebtedness was less than the amount of credit

to be extended, and that Best Foods were not justified in failing to fill the orders, if they failed to fill the orders, then you determine as to just what damages did Mr. Fortier suffer in that respect, bearing in mind that he does have a legal obligation of doing everything that he reasonably can to mitigate those damages."

The parties were in accord that there was a "mutual distributing agreement." What, however, were the terms of the agreement which the jury has said were broken by the plaintiff with consequent damage to the defendant? We are satisfied from our study of the record that the jury in finding the terms of the contract must have based their conclusions on guess, conjecture, or surmise. The same uncertainty obviously affected the assessment of damages. No citations of authority are necessary to buttress the principle that such a shaky foundation will not support the findings inherent in the verdict.

The stated issues relating to termination of the agreement and the assessment of damages were not properly reached on the record before us, and so need not be, and are not, considered.

The plaintiff moved for a directed verdict at the close of the evidence on the ground, among others, that there was no showing of any obligation "on the part of the Plaintiff to make any minimum amount of deliveries as a contractual obligation." Decision on the motion was reserved and the case submitted to the jury. The plaintiff did not choose to seek a judgment notwithstanding the verdict or otherwise to object to the jury's decision.

The net result is that we deny the defendant's appeal. He has the good fortune of retaining the judgment for $420.04.

The entry will be

*Appeal denied.*